**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**


**Priscilla Thomas,**

      **Plaintiff,**

**-V-**                                       **Case No. 2:04-cv-0944
JUDGE SMITH
Magistrate Judge Abel**

**Ohio Civil Rights Commission,
et al.,**

      **Defendants.**


**OPINION AND ORDER**

      Pro se plaintiff asserts, *inter alia,* that defendants discriminated against her in her employment because of her race, sex and disability, and that they retaliated against her for engaging in protected activities.  Defendants move for summary judgment (Doc. 29).  For the reasons that follow the Court grants defendants' summary judgment motion.


**I.  Facts**

**A.  Parties**

Plaintiff is an individual citizen of the State of Ohio.  She is African-American.

The remaining defendants are Nationwide Mutual Insurance Company ("Nationwide"),

and the following individual Nationwide employees: Donna J. Willmarth, Marcia J. (Smith) Jones, Nichole Nares, Michael E. Johnson, and Thomas C. Brandyberry.

## B.  Salaries at Nationwide

Nationwide assigns a job classification for each employment position.  The job classification summarizes the most important features of the job, including minimum requirements, duties, and responsibilities.  Each job classification is also assigned to a pay band, which is a salary range having a minimum and maximum rate of pay.  There are nine pay bands, A through I.  A market reference value ("MRV"), which represents the compensation range ordinarily paid in the marketplace for a similar job, is determined for each job classification.

Near the beginning of each calendar year, associates and their managers set annual objectives in accordance with Nationwide's strategic initiatives.  They identify competencies that are critical to the success of the associate, the associate's business unit, and Nationwide. Managers and associates also set both individual and group objectives for the business unit for each associate.

Group objectives are set for a team or business unit as a whole.  Each associate receives the group's performance rating on these objectives regardless of the individual associate's contributions to the group.  Individual objectives are linked to Nationwide's objectives, and individual performance is linked to pay.  Performance for the calendar year is rated quarterly, and then during the first quarter of the following calendar year using one of the following ratings:

0 = Does Not Meet performance expectations

2

1 = Achieves performance expectations

2 = Exceeds performance expectations

Calendar year 2001 performance was rated by managers from January 2002 through March 2002.  Generally, a performance summary meeting is held between the associate and the unit manager.  During the meeting, associates are informed of whether a merit increase **has been awarded and, if so, the amount of the increase.**  A "merit increase" is an adjustment to base salary as the result of individual performance that benefits the business unit and organization.          As part of the calendar year budget process, each business unit is allocated a salary expense budget for associate salaries in the business unit for the calendar year.  From January to March, each business unit is informed of the salary expense budget.  Each manager must then make judgments concerning merit increase allocations within the limits of the salary expense budget.

### C.  Plaintiff's Employment

Nationwide Financial Services ("NFS") hired plaintiff on May 16, 2000.  NFS is the life insurance and retirement savings arm of Nationwide.  NFS hired plaintiff into the Systems and Programming Unit ("Unit").  Due to an error in the job title in plaintiff's offer of hire letter, she began working at NFS as a "Programmer."  On March 5, 2001, plaintiff was transferred to the job classification "Programmer Analyst," which is one level above the Programmer position. **Plaintiff was responsible for supporting the delivery of electronic interfaces to broker dealers, communicating with**

customers, and correcting production problems.

A Programmer Analyst is assigned to pay band E.  In 2000, the MRV for a Programmer Analyst was $42,700 to $47,400.  NFS hired plaintiff at an annual salary of $51,000, which was above the MRV.

In about February 2001, a restructuring occurred at Nationwide.  As a result, Mr. Johnson was replaced as Unit Manager by Marchia Jones (who is African-American). Ms. Jones supervised plaintiff throughout 2001 until late October/early November.  Thomas C. Brandyberry (who is White) then replaced Ms. Jones as the Unit Manager. The Unit Director was Ms. Donna Willmarth.  Ms. Jones identified what she believed to be a number of problems with plaintiff's individual job performance during calendar year 2001.  In October 2001, Ms. Jones drafted a work improvement program ("WIP") for plaintiff that was designed to address and correct plaintiff's performance issues.

Ms. Jones presented the WIP to Human Resources for review.  However, before the WIP could be presented to plaintiff, the organizational restructuring occurred.  Ms. Jones moved to another work unit and was replaced by Mr. Brandyberry.  Plaintiff's performance problems allegedly continued after Mr. Brandyberry became Plaintiff's Unit

4

Manager in late 2001.

NFS was adversely affected by the overall business downturn in 2001.  As a result of the economic downturn, NFS instituted a long-term hiring freeze, significantly reduced staff, and allocated very little money for merit increases.

In 2002, plaintiff's business unit was budgeted $1,159,180 for associates' pay. The total salary expense for plaintiff's unit in 2001 was $1,151,741.  As a result, only $7,440 (0.6% of the salary budget) was budgeted for merit increases among the nineteen associates and managers in the Systems and Programming Unit.

Mr. Brandyberry had been plaintiff's Unit Manager for only about a month in 2001.  Ms. Jones consulted with him concerning plaintiff's final 2001 performance evaluation ratings.  On March 21, 2002, Mr. Brandyberry met with plaintiff to review her 2001 job performance.  Mr. Brandyberry provided plaintiff with a copy of her Objectives Worksheet and discussed what was perceived to be the inconsistent quality of plaintiff's work.  Plaintiff was rated as an "Achieves" performer.  Mr. Brandyberry informed plaintiff she would not receive a merit increase.  Plaintiff was rated low on individual objectives.  Her overall performance rating,

5

however,  was boosted by the high ratings that were given to the Unit's group objectives.

Relatively little money was budgeted for merit increases in the Systems and Programming Unit for 2002.  For this reason, only three individuals out of the nineteen members of the Systems and Programming Unit received merit increases on April 1, 2002.  Of the nineteen associates in the Unit, four individuals were rated as "Exceeds" performers, and the remaining fifteen individuals, including Plaintiff, were rated as "Achieves" performers.  Of the four "Exceeds" performers, three of them received 4% merit increases.  The fourth "Exceeds" performer was supervised by Mr. Brandyberry and did not receive a merit increase.

**There were six Programming Analysts, including plaintiff, in plaintiff's Unit.  All of them were "Achieves" performers, and none of them received a merit increase.  Three of these individuals were supervised by Mr. Brandyberry and three of them were supervised by Mr. Sigler.  None of the fifteen "Achieves" performers in the Unit, including the Unit Managers, received a merit increase**

In late March/early April 2002, another meeting was held at plaintiff's request with Nichole Nares, Director of NFS Human Resources, Mr. Brandyberry, and Ms. Willmarth to discuss the reasons plaintiff had not been awarded a merit increase.  Examples of plaintiff's performance deficiencies were discussed during the meeting.

Plaintiff was being paid at the 2002 midpoint ($51,000) for salary band E, although she had slipped slightly below the 2002 MRV.  Plaintiff resigned from her employment with Nationwide on or about June 22, 2002.

On November 22, 2002, plaintiff filed a charge of discrimination alleging race

discrimination with respect to the merit increase issue, but did not include any allegation

regarding her resignation from employment.  The EEOC issued a right to sue letter on June 23,

2004.  The Clerk's office received plaintiff's complaint on September 28, 2004.  The complaint

was filed on September 30, 2004.

## II.  Summary Judgment

The standard governing summary judgment is set forth in

Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any,
> show that there is no genuine issue as to any material
> fact and that the moving party is entitled to judgment
> as a matter of law.

Summary judgment will not lie if the dispute about a material

fact is genuine; "that is, if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary

judgment is appropriate, however, if the opposing party fails to

make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will

bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477

U.S. 317, 322 (1986); see also Matsushita Electric Industrial

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court

must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150-51 (2000).  The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe.  <u>Id.</u>  Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses.  <u>Id.</u>

The Sixth Circuit Court of Appeals has recognized that <u>Liberty Lobby</u>, <u>Celotex</u>, and <u>Matsushita</u> have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments.  <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1476 (6th Cir. 1989).  The court in <u>Street</u> identified a number of important principles applicable in new era summary judgment practice.  For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment.  <u>Id.</u> at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a

8

properly supported motion for summary judgment.'" Id.
(quoting Liberty Lobby, 477 U.S. at 257). The nonmoving party
must adduce more than a scintilla of evidence to overcome the
summary judgment motion. Id. It is not sufficient for the
nonmoving party to merely "'show that there is some
metaphysical doubt as to the material facts.'" Id. (quoting
Matsushita, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search
the entire record to establish that it is bereft of a genuine issue of
material fact." Id. at 1479-80. That is, the nonmoving party has
an affirmative duty to direct the court's attention to those
specific portions of the record upon which it seeks to rely to
create a genuine issue of material fact. In re Morris, 260 F.3d 654, 665 (6th
Cir. 2001).

### III. Discussion

#### A. Failure to exhaust administrative remedies

Defendants first argue that plaintiff's federal discrimination
and retaliation claims other than her claim of racial
discrimination are subject to dismissal because plaintiff failed to
exhaust her administrative remedies.

A judicial complaint must be limited to the scope of the

EEOC investigation reasonably expected to grow out of the charge of discrimination.  Ang v. Proctor & Gamble Co., 932 F.2d 540, 546-47 (6th Cir. 1991).  "[W]here facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim."  Davis v. Sodexho Cumberland College Cafeteria, 157 F.3d 460, 463 (6th Cir. 1998).

Plaintiff  filed a charge of discrimination with the EEOC and the OCRC on November 22, 2002 alleging only race discrimination.  The charge did not include claims for harassment or retaliation based on race.  The charge did not include claims for sex or disability discrimination, or for harassment or retaliation based on any of the protected classifications outlined in Title VII or the ADA.

The Court finds that plaintiff failed to exhaust administrative remedies as to any discrimination or retaliation claims other than her claim of racial discrimination.  Plaintiff's argument that she told an OCRC representative that she wanted to file "on harassment etc. and to amend plaintiff [sic] charge to harassment, etc." does not alter the fact that the claims were not included in the charge.  For this reason, defendants are entitled to summary judgment in their favor with respect to plaintiff's discrimination and retaliation claims other than her claim of racial discrimination.

**B.  Timeliness**

Defendants argue that plaintiff's federal discrimination and retaliation claims are time-barred because the complaint was not filed within 90 days after plaintiff received her right-to-sue letter from the EEOC.

An aggrieved individual who desires to file a Title VII or ADA claim in federal court must do so within 90 days from the receipt of a right-to-sue notice from the EEOC.  See 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a); Peete v. American Standard Graphic, 885 F.2d 331, 331-32 (6th Cir.1989).  The actual receipt of a right-to-sue letter by the charging party is not required to start the 90-day limitations period.  See Banks v. Rockwell Int'l N. Am. Aircraft Operations, 855 F.2d 324, 326 (6th Cir.1988); Hunter v. Stephenson Roofing, Inc., 790 F.2d 472, 474-75 (6th Cir.1986).  As long as the right-to-sue letter is correctly mailed by the EEOC to the charging party's address of record, a presumption exists that the mail is received by the addressee and the 90-day limitations period begins to run five days after the date of mailing. See Banks, 855 F.2d at 326; Cook v. Providence Hosp., 820 F .2d 176, 179 n. 3 (6th Cir.1987); Hunter, 790 F.2d at 475. "[T]he ninety-day filing requirement of 42 U.S.C. § 2000e-5(f)(1) is not a jurisdictional requirement but, instead, is a timing requirement similar to a statute of limitations, subject to waiver, estoppel and equitable tolling."

11

<u>Truitt v. County of Wayne</u>, 148 F.3d 644, 646-47 (6th Cir.1998).

Here, the 90-day limitations period for initiating a lawsuit began to run for plaintiff on Monday, June 28, 2004 and expired, at the latest, on Monday, September 27, 2004. Plaintiff's statement that she "[does] not check her mailbox everyday and/or work out of town" is insufficient to excuse her failure to timely file the complaint or toll or suspend the running of the 90-day period.   Nothing in the record to suggest that the 90-day period should be tolled on the basis of waiver, estoppel, or equitable tolling.

Plaintiff did not initiate this lawsuit against Defendants within the statutory 90-day period, and her federal discrimination and retaliation claims are therefore time-barred. Defendants are entitled to summary judgment in their favor on all of plaintiff's federal discrimination and retaliation claims.

### C. *Prima facie* case of race discrimination or sex discrimination

Defendants further contend that plaintiff cannot establish a *prima facie* case of sex or race discrimination because she cannot establish that she was treated differently from similarly-situated persons outside of her protected class.

The elements of prima facie case of employment discrimination are:

1. that the plaintiff is a member of a protected class;

2. that the plaintiff was qualified for the position;

3. that the defendant subjected the plaintiff to an adverse employment action; and

4. the defendant did not subject similarly situated persons outside the protected class to such adverse actions.

<u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993); <u>McDonnell Douglas Corp. v.</u>

Green, 411 U.S. 792, 802 (1973).  If the plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the adverse action against the plaintiff. See Hicks, 509 U.S. 502, 506-07 (1993); Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  If the defendant comes forward with a legitimate, non-discriminatory reason for its actions, then the burden shifts to the plaintiff to prove that the defendant's proffered reason is a mere pretext for discrimination. See Hicks, 502 U.S. at 512, n. 4; Burdine, 450 U.S. at 253.  "The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens.  The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine 450 U.S. at 253.

**Plaintiff argues that she can establish a** *prima facie* case based upon: (1) Stella Chik's alleged salary prior to November 2001 and alleged promotion in November 2001 for calendar year 2000 job performance; (2) alleged promotions and raises issued to Xavier Joseph and Stamatis Tsardoulias for their job performance in 2000; and (3) her year 2000 performance evaluation.  However, each of these claims is time-barred.

Plaintiff failed to file a charge of discrimination within 300 days of the date these actions were taken, as required by 42 U.S.C. § 2000e-5(e)(1).  All of the above-referenced employment actions took place in budget year 2001.  They are unrelated to Plaintiff's 2002 merit increase denial at issue in this case.  The Court therefore finds that plaintiff has failed as a matter of law to establish a *prima facie* case of race or sex discrimination.

13

**D.** *Prima facie* **case of disability discrimination**

Defendants additionally assert that plaintiff is unable to establish a *prima facie* case of

disability discrimination.  Plaintiff appears to argue that she can establish a *prima facie* case

of

disability discrimination based upon her belief that Nationwide denied requested

accommodations.  The basis for this argument is plaintiff's assertion that she asked to be "put

on [the] development team since Defendants alleged Plaintiff had production problems,

implied/suggested that something was wrong with Plaintiff, etc," but that Defendants

told her "No" because her current team needed her.  Response at 13.  Plaintiff fails to explain

how or why this requested transfer would constitute a reasonable accommodation for an

alleged disability, how or why the transfer would have reasonably accommodated her alleged

disability, or the nature of her alleged disability.

Plaintiff asserts claims under the Americans with

Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA").  The

ADA forbids employment discrimination based upon

disability:

> No covered entity shall discriminate against a
> qualified individual with a disability because of the
> disability of such individual in regard to job
> application procedures, the hiring, advancement, or
> discharge of employees, employee compensation,
> job training, and other terms, conditions, and
> privileges of employment.

28 U.S.C. § 12112(a).  A plaintiff must establish the following

elements to establish a *prima facie* case of employment

discrimination under the ADA:

> (1)   he or she is disabled;

> (2)   otherwise qualified for the position, with or without reasonable accommodation;

> (3)   suffered an adverse employment decision;

> (4)   the employer knew or had reason to know of the plaintiff's disability; and

> (5)   the position remained open while the employer sought other applicants or the disabled individual was replaced.

Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775, 779 (6th Cir. 1998)(quoting Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1186 (6th Cir. 1996)).  If the plaintiff establishes a *prima facie* case, then the burden shifts to the employer to articulate a non-discriminatory reason for its employment decision.  Id.  If the employer offers a facially legitimate explanation, the employee then bears the burden of demonstrating that the proffered reason is a mere pretext for discrimination.  Id.

The ADA provides the following definition of disability:

The term "disability" means, with respect to an individual —

(A)  a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B)  a record of such an impairment; or

15

(C)  being regarded as having such an impairment.

42 U.S.C. § 12102(2).  Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).  For an impairment to substantially limit a person's ability to work, the person must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  29 C.F.R. 1630.2(j)(3)(i). "' An inability to perform a particular job for a particular employer' does not establish a substantial limitation on the ability to work; rather, 'the impairment must substantially limit employment generally.'"  <u>Patterson v. Chicago Ass'n for Retarded Citizens</u>, 150 F.3d 719, 725 (7th Cir. 1998)(quoting <u>Byrne v. Bd. of Educ., Sch. of West Allis-West Milwaukee</u>, 979 F.2d 560, 565 (7th Cir. 1992)).

Defendants argue that plaintiff has failed to submit evidence that she is "disabled." Plaintiff never informed any of the individual defendants that she believed she was disabled. Furthermore, plaintiff has not established that she has an impairment that substantially limited a major life activity. There is no evidence, nor does plaintiff  allege, that she was unable to care for herself, perform manual tasks, walk, see, hear, speak, breath, learn, or work. Plaintiff failed to establish the first element of a *prima facie* case.

16

Plaintiff argues that there was a "perception of impairment" because defendants believed she had production problems and she believed defendants thought something was "wrong with her."  Plaintiff's argument, however, is not supported by evidence.  To survive summary judgment, it is plaintiff's burden to "present affirmative evidence." Street, at 1479 (quoting Liberty Lobby, 477 U.S. at 257).  Plaintiff's own conjecture and speculation are insufficient to give rise to a genuine issue of material fact.  See Harrow Products, Inc. v. Liberty Mut. Ins. Co., 64 F.3d 1015, 1020 (6th Cir. 1995); Salisbury v. Thermatex Corp., 704 F. Supp. 778, 780 (N.D. Ohio 1988).  For the above reasons, defendants are entitled to summary judgment in their favor on plaintiff's age discrimination claim.

### E.  *Prima facie* case of retaliation

Defendants further maintain that they are entitled to summary judgment with respect to plaintiff's claim of retaliation.

Title VII prohibits an employer from retaliating against an employee who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  The elements of *prima facie* case of retaliation are:

> (1) that the plaintiff engaged in activity protected by Title VII; (2) that the defendant knew of this exercise of his protected rights; (3) that the defendant consequently took an employment action adverse to plaintiff, and (4) that there is a causal connection between the protected activity and the

17

adverse employment action.

<u>Stouss v. Michigan Dept. of Corrections</u>, 250 F.3d 336, 342 (6th Cir. 2001); <u>see also</u>  <u>Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.</u>, 783 F.2d 50, 54 (6th Cir.), <u>cert. denied</u>, 478 U.S. 1006 (1986).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to come forward with a legitimate, non-discriminatory and non-retaliatory reason for the adverse action against the plaintiff.  <u>Hicks</u>, 509 U.S. at 506-07; <u>Texas Dept. of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981).  If the defendant comes forward with a legitimate, non-discriminatory and non-retaliatory reason for its actions, then the burden shifts to the plaintiff to prove that the defendant's proffered reason is a mere pretext for discrimination or retaliation.  <u>Hicks</u>, 509 U.S. at 512 n. 4; <u>Burdine</u>, 450 U.S. at 253.  "The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens.  The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated [or retaliated] against the plaintiff remains at all times with the plaintiff."  <u>Burdine</u> at 253.

Plaintiff alleges in her Response that she told "defendants" on April 12, 2001 that "she

was opposed to being discriminated against," and that her work was being "sabotaged." **She asserts that she threatened to file a charge** because she had not received documentation of her performance problems, not because of alleged discrimination.

Plaintiff did not engage in any protected activity under Ohio law or Title VII. "In order to engage in a protected opposition activity, a plaintiff must make an overt stand against suspected illegal discriminatory action.  "'A vague charge of discrimination … is insufficient to constitute opposition to an unlawful employment practice.'" Jackson v. Champaign Nat'l Bank & Trust Co., No. 00AP-170, 2000 WL 1376534, at * 7  (Ohio App. 10th Dist. Sept. 26, 2000)(quoting Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1313 (6th Cir. 1989)).

During her employment with Nationwide, plaintiff did not file any complaints of unlawful discrimination.  Complaining vaguely about not getting a raise, promotion, or bonus, absent an accompanying specific complaint of illegal discriminatory conduct, does not constitute protected activity.  The Court finds that plaintiff is unable to establish a *prima facie* case of retaliation as a matter of law.  Defendants are therefore entitled to summary judgment in their favor on plaintiff's retaliation claim.

## F.  Pretext

Defendants also argue that plaintiff cannot establish

pretext as a matter of law.

"An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." Smith v. Chrysler Corp., 155 F.3d 799, 805-06 (6th Cir. 1998). "In challenging an employer's action, an employee 'must demonstrate that the employers reasons (each of them, if the reasons independently caused [the] employer to take the action it did) are not true.'" Id. (quoting Kariotis v. Navistar Int'l Trans. Corp., 131 F.3d 672, 676 (7th Cir. 1997)).

In examining whether the stated reason is pretext, the Court must determine whether the employer reasonably relied on the particularized facts before it at the time it made the employment decision. Id. at 807. The employer is not required to show that it left no stone unturned; rather, the issue is whether the employer made a reasonably informed and considered decision before taking the adverse employment action. Id. The Court should not blindly accept the proffered reason as honest. Id. If the employee adduces evidence establishing that the employer failed to make a reasonably informed and considered decision, then its decisional process

is "unworthy of credence," and any reliance by the employer on such a process cannot be deemed "honestly held."  Id.  at 807-08.

The Court finds that Nationwide has articulated a legitimate, nondiscriminatory reason why plaintiff did not receive a merit increase for her job performance in 2001. Plaintiff's work performance rating for calendar year 2001 did not warrant an increase when compared with the performance ratings of other associates in the business unit.  Plaintiff was an "Achieves" performer, and was treated the same as every other male, female, Caucasian, Pacific Islander, African-American, disabled and nondisabled "Achieves" performer in the business unit.  Plaintiff has not presented any evidence to establish that defendants' articulated reason was pretextual.

## IV.  Fraud

Defendants additionally assert that they are entitled to summary judgment on plaintiff's fraud claim.

In Ohio, the elements of a claim of fraud are:

(a)    a representation or, where there is a duty to disclose, concealment of a fact,

(b)    which is material to the transaction at hand,

(c)    made falsely, with knowledge of its falsity, or with such utter disregard

21

and recklessness as to whether it is true or false that knowledge may be
inferred,

(d)    with the intent of misleading another into relying upon it,

(e)    justifiable reliance upon the representation or concealment, and

(f)    a resulting injury proximately caused by the reliance.

Burr v. Stark Cty. Bd. of Commrs., 23 Ohio St. 3d 69 (1986); Corrice v. Cleveland Electric

Illuminating Company, 1994 WL 57724, *4 (Ohio App. 8 Dist. Feb. 24, 1994)(applying test

in employment case).

    **Plaintiff alleges in her response that defendants**
**committed fraud through perjury and conflicting testimony,**
**and that the last act of fraud by defendants occurred on March**
**21, 2002.   Plaintiff does not, however, identify any specific**
**statements, or even why she believes such statements were**
**fraudulent.  Such vague references are insufficient to satisfy**
**plaintiff's burden of pleading fraud with "particularity."** Pollock
v. Kanter, 68 Ohio App.3d 673, 681-82 (1990)("particularity" requirement under Ohio law
entails allegations of the specific **statements claimed to be false and the**
**time and place of the statements).  Furthermore, a party**
**opposing a motion for summary judgment "may not rest upon**
**mere allegations or denials of his pleading, but . . . must set**
**forth specific facts showing that there is a genuine issue for**
**trial."** Liberty Lobby, **477 U.S. at 248.  The Court finds as a**
**matter of law that plaintiff has failed to allege, let alone submit**

22

evidence to prove, an actionable claim of fraud.  Defendants are therefore entitled to summary judgment in their favor with respect to plaintiff's fraud claim.

### V.  Unethical Practices

Defendants next argue that plaintiff's claim of unethical practices fails as a matter of law.

Plaintiff apparently seeks to assert a claim pursuant to Section 806 of the Sarbanes Oxley Act, 18 U.S.C. § 1514A.  An action under the Act must be commenced not later than ninety days after the date on which the violation occurred.  18 U.S.C. § 1514A(b)(1)(D). Therefore such a claim is time-barred.

To the extent plaintiff is attempting to establish an Ohio public policy tort claim for wrongful discharge, her claim fails as a matter of law.  First, plaintiff was not dismissed by Nationwide.  She voluntarily resigned her employment on or about June 22, 2002.  Plaintiff does not contest this fact in her Response.  Second, plaintiff does not allege in any of her pleadings, including her Response, any of the substantive elements for a public policy wrongful discharge claim, including the identity of the "clear public policy" upon which plaintiff relies.  Moreover, Ohio courts have not recognized a public policy tort

23

claim based simply upon "unethical practices." Plaintiff's conclusory and unsupported claims that Defendants engaged in unethical practices are not sufficient to avoid summary judgment. See Mitchell v. Toledo Hosp., 964 F.2d 577, 581 (6th Cir. 1992) (mere allegations are insufficient to survive a motion for summary judgment). For these reasons, the Court finds that defendants are entitled to summary judgment in their favor on plaintiff's unethical practices claim as a matter of law.

## VI. Breach of contract

The elements of a breach of contract claim are as follows:

(1) the terms of the contract, (2) performance by the plaintiff of his obligations, (3) the breach by the defendant, (4) damages, and (5) consideration.

American Sales, Inc. v. Boffo, 593 N.E.2d 316, 321 (Ohio App. 1991).

The only allegation in the Response that appears to go to plaintiff's breach of contract claim is that plaintiff "had to go a year from November 2000 to November 5, 2001 without Lotus Notes email … nor did I have access to the intranet applications." which she alleges is a "breach of duty." Response at 11.

Plaintiff was an at-will employee. Plaintiff therefore had no contract of employment with Nationwide. The Court finds that plaintiff has failed as a matter of law to demonstrate the existence of an enforceable contract. For this reason, defendants are entitled to summary

judgment in their favor with respect to plaintiff's breach of contract claim.

## VII.  Defamation

Defendants contend that they are entitled to summary judgment with respect to plaintiff's defamation claim.

In her Response, Plaintiff alleges: "Since co-workers sabotage plaintiff's work and the breach of duty by defendants, it made plaintiff look bad to [Nationwide's] customers and management resulting in defamation of character." Response at 12.  This bare allegation is insufficient to defeat a motion for summary judgment.  Harrow Products, Inc. v. Liberty Mut. Ins. Co., 64 F.3d 1015, 1020 (6th Cir. 1995)(conjecture and speculation are insufficient to defeat a Motion for Summary Judgment).  Plaintiff's defamation claim is also time-barred.  See Ohio Rev. Code § 2305.11(A)(one year statute of limitations).  The Court finds that defendants are entitled to summary judgment in their favor with respect to plaintiff's defamation claim as a matter of law.

## VIII.  Equal pay

Defendants also argue that they are entitled to summary judgment in their favor with respect to plaintiff's federal and state equal pay claims because they are time-barred.

The statute of limitations for a federal Equal Pay Act claim is two years, except that a wilful violation extends the limitation period to three years.  29 U.S.C. § 255(a).  The statute

of limitations for an Ohio equal pay claim is one year.  Ohio Rev. Code § 4111.17(E).

      With respect to her federal Equal Pay Act claim, plaintiff's bare allegation that "These are 'willful' violations" is insufficient to invoke the three-year statute of limitations. Plaintiff has presented no evidence from which a rational trier of fact could infer that defendants knew, or acted with reckless disregard for, whether their conduct violated the Equal Pay Act.  Indeed, the fact that the subject pay disparities occurred due to the operation of a merit system suggests otherwise.

      Plaintiff's employment with Nationwide terminated effective June 22, 2002.  She did not initiate the instant action until September 30, 2004, more than two years later. Accordingly, her equal pay claims are time-barred under both state and federal law.  To the extent plaintiff is alleging violations of the federal or state Equal Pay Act based upon other of defendants' actions in 2000-2001 (*i.e.* based on her 2001 performance evaluation), said claims would also be time-barred.

      For the above reasons, defendants are entitled to summary judgment on plaintiff's equal pay claims as a matter of law.

### IX.  Disposition

Based on the above, the Court **GRANTS** defendants' summary judgment motion  (Doc.  29).

The Clerk shall enter final judgment in favor of defendants, and against plaintiff, dismissing this action in its entirety with prejudice.

The Clerk shall remove this case from the Court's pending cases and motions lists.

The Clerk shall remove Doc. 29 from the Court's pending CJRA motions list.

**IT IS SO ORDERED.**

 /s/ George C. Smith
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**